## KELLER *v.* THE EQUITABLE FIRE INSURANCE COMPANY.

FRAUDS.—CONTENTS OF WRITTEN INSTRUMENT.—To a suit upon a premium note, given on a policy of insurance, the defendant answered that the agent of the company had proposed to defendant, for the sum named, to insure his house against loss by fire; that defendant accepted said offer upon the condition that for the sum named he should have an unconditional policy, which should not be subject to the payment of any further assessments for premiums; that the agent delivered a policy which he falsely and fraudulently represented conformed to the contract, but that in fact said policy contained a condition which made the liability of the company depend upon the prompt payment by defendant of such assessments as might be made upon a premium note for $126; that defendant was an illiterate man, only able to read with great labor and difficulty, as the agent well knew, and relied upon the truth of said representations; that the condition in said policy was printed in type so small as to make it extremely difficult for any one to read the same, and that defend-

ant was wholly ignorant thereof until he received notice of an assessment upon said premium note; that said note was procured by the fraudulent representation of said agent that the paper which defendant signed was an application for insurance, &c. The policy was brought into court and offered for cancellation.

*Held,* that the rule that the law favors the diligent, should not be applied for the protection of those who take advantage of ignorance to perpetrate fraud.

*Held,* also, that if a party may not rely upon the representations of another as to the contents of a written instrument, neither must the other contracting party, by his own act, increase the difficulties of such an examination. The amount of diligence required is to be determined by the relation of the parties and the circumstances of each case.

*Held,* also, that the answer presented a good defense.

APPEAL from the *Bartholomew* Common Pleas.

RAY, J.—Action by the appellee upon a note. Answer, in substance, that the consideration for the note in suit was that on the 7th day of *July,* 1865, the plaintiff, by her agent, proposed to insure the property of the defendant against loss by fire for the sum of $56 70, of which the sum of $6 70 was to be paid cash in hand, and a note given for the remainder, due *April* 1, 1866; that said agent agreed, in consideration of said sum, payable as aforesaid, that he would issue and deliver to the defendant an unconditional policy of insurance for the amount agreed upon, without any reference to premium notes, for the term of five years; that no premium notes should be required, and no condition in said policy making the payment of any loss by fire to depend on the payment of any assessment. The proposal was accepted by the defendant, and the sum required in cash paid, and the note in suit executed and delivered, and a policy was received which it was fraudulently represented by said agent conformed to the contract, and the defendant, confiding in and relying on said false and fraudulent statements and representations of said plaintiff's agent, and believing the same to be in all things true, and being unused to business, and an unsuspecting and illiterate person, and unable to read writing or print without great difficulty, and the condition herein stated being in very fine and small

print, and very difficult to be read by persons of more education and better capacity than defendant, he, said defendant, in full trust and confidence in and reliance on said false and fraudulent statements, put away his said policy of insurance for security, and did not learn the contents of said policy until recently, to-wit, on the 10th day of *March*, 1867, when he received from plaintiff a notice by mail informing him that he had been assessed by plaintiff with $42 on a premium note of $126, which plaintiff charged was executed by this defendant, and required him to pay the same immediately, and on examining his policy he ascertained that the same set forth, as a part of the consideration thereof, a premium note of $126, and with the following condition: The condition makes the liability of the plaintiff for losses dependent on the payment within a limited time of the assessments.

The answer further avers, that the plaintiff has no agent at the county where the suit is brought, or any adjoining county, or nearer than *Indianapolis*, and since the discovery of the fraud defendant has been unable to see any agent of plaintiff, to return said policy; "that at the time of said insurance the said agent of said plaintiff handed to this defendant a paper, representing that it was an application for insurance only, and that he was in a great hurry and desired defendant to sign it; that he could not wait until it was read, but that defendant could rely on his statement that it was an application only, and the same was not read to him; that defendant, being an illiterate person, as aforesaid, and of confiding temperament, and relying on said representations and statements of said agent, and believing the same to be true, and believing that the paper so handed to him by said agent was an application for insurance only, and nothing more, he signed the same; which representations said agent knew to be false," &c. "He avers that the plaintiff now holds said premium note fraudulently, and that the same was corruptly procured as aforesaid," and that they threaten to sue on the same; that the note now in suit

is without consideration, and defendant asks relief. The policy is brought into court and offered for cancellation.

A demurrer was sustained to this answer. It is urged, in support of this ruling, that the defendant had no right to rely upon the representations of the plaintiff's agent and accept the policy without examination, although he was illiterate, and the conditions of the policy so printed as to be with difficulty read by persons of more education and capacity.

The rule that the law favors those who are diligent and careful, rather than the reckless and indifferent, is not to be applied for the protection of those who avail themselves of the ignorance existing in the community to perpetrate fraud upon its members.

If, as is charged in the answer, the conditions of an insurance policy, upon which its validity depends, are to be printed in a type so small as in fact to discourage their perusal, and in terms requiring more than ordinary capacity to comprehend their effect, it must be expected that as the standard of education and intelligence requisite to understand the conditions is thus elevated, the courts will, in a corresponding degree, lower the tests of diligence exacted from the insured. Thus, if it be the law that a contracting party may not rely upon the representations of the party with whom he contracts, as to the contents of a written instrument, but must examine the instrument for himself, it is at the same time implied that the party who represents the contents of the instrument shall not, by his own act, have rendered such examination of more than ordinary difficulty. In other words, the amount of diligence required is to be determined by the relation of the parties and the circumstances of each case. If one party, for his own purposes, renders that more difficult to accomplish which the law has ordinarily required should be done, its performance in such special case will not be exacted with the usual strictness. It is also true, that the same diligence, in learning the contents of an instrument, executed by one

contracting party, and delivered to the other, as a compliance with the contract, is not always exacted from the party receiving, as would be required were he executing the paper.

Thus, in the case of *Botsford* v. *McLean et al.*, 45 Barb. 478, upon a sale of personal property, the purchasers agreed to pay therefor the sum of $6,000, as follows: $2,000 in cash, and the balance in four equal annual payments, *with interest*, for which they were to execute their four several promissory notes, for $1,000.each, with interest, payable in one, two, three and four years, and to secure the payment thereof by a chattel mortgage upon the property. The $2,000 was paid down, and a chattel mortgage was executed, conditioned for the payment of the said notes, with interest. The purchasers having been trusted to draw the notes, they procured their attorney to draw them, and then executed and delivered the same to the seller, as the notes required by the contract, although aware that two of them did not bear interest; it was held that this was a clear case of fraud, for which the seller was entitled to have the notes reformed.

In that case, it was said: "If one party is trusted to reduce the contract to writing, he is bound to do it truly, and any variation from it, either by omitting some of its terms, or by inserting provisions not embraced in it, if not known to the other party, and distinctly assented to by him, is a clear fraud."

The answer under consideration presents a much stronger case, for here the appellee not only rendered the examination difficult, but, taking advantage of personal confidence, represented the instrument as fully complying with the contract.

The same is true in regard to the execution of the premium note. The agent of the appellee, not only falsely stated the contents of the instrument, but, by a fraudulent pretense, prevented its examination. In this case, there can be no question of delay. If the party was excusable in re-

ceiving the policy, believing it to be what he had contracted for, there was no requirement that he should thereafter examine it, until, by the notice of assessment, his suspicions were excited.

We think the appellant, under the averments of the answer, is entitled to relief. He certainly has not received the consideration for which the note was given. What that relief should be, whether by reformation of the policy or the cancellation of it, is not for us, at present, to determine. As this is a court of review, that question is not before us. The demurrer should have been overruled.

The judgment is reversed, and the cause remanded.

*F. T. Hord,* for appellant.

*S. Stansifer* and *F. Winter,* for appellee.