WHITMAN v. MEISSNER and Another.

SUPREME COURT.—*Harmless Error*—The Supreme Court will not reverse a ruling of a lower court upon a minor question of practice, where it is not apparent that an injury has been done by such ruling.

FRAUD.—*Pleading*.—*Mutual Insurance Company.*—*Premium Note.*—Suit by the receiver of a mutual insurance company upon a premium note executed to said company by the defendant, whose answer and cross complaint, set out in the opinion of the court, alleging, at great length, fraudulent representations of the agent of said company as to matters of law and of fact, &c., was held sufficient on demurrer.

APPEAL from the Laporte Circuit Court.

PETTIT, C. J.—The appellant, a receiver of the Sinnissippi Insurance Company, which was organized under a general law of this State, 1 G. & H. 395, brought suit on three notes made by the appellees payable to said company, dated respectively May 29th, 1865, for eight hundred dollars, February 24th, 1866, for eight hundred dollars, December 1st, 1865, for one hundred dollars. The complaint had three paragraphs.

The appellees answered, first, by general denial; and second, as follows: " For second ground of defense, and by way of cross complaint as to each and all of said paragraphs in said complaint mentioned, the defendants say that heretofore, to wit, on the 29th day of May, 1865, and from that time until long after the 24th day of February, 1866, they were wholly uninformed and ignorant as to the nature of the organization, character, and responsibility of the Sinnissippi Insurance Company, and as to the law under which the same was organized, and had no knowledge as to whether it was solvent and responsible and managed with a view to promote the interests of the parties insured, or for the benefit of the parties managing the same; that they were both Germans and but slightly acquainted with the laws and regulations governing such institutions in the State of Indiana, and were obliged to rely chiefly on the opinions and information of other persons, who were better informed in such

matters; that thereupon, on or about the said day, the said Sinnissippi Insurance Company, by its agent, applied to the defendants, at Laporte, to insure their said factory and property connected therewith, in said company. At that time, Christian Houser and one D. W. Weir owned a large tannery situate in said city, and it was known both to said agent and the defendants that said Weir had for a long time resided in Indianapolis, where said insurance company was located, and where it had its office, and said defendants placed much confidence in the business capacity, knowledge, and vigilance of said firm, and therefore, knowing and seeking to take advantage fraudulently of such confidence, said agent called on the defendants and urgently requested and advised them to insure their said property in said company; and to induce them to do so, falsely and fraudulenty stated and represented to them that said company was entirely solvent and responsible, and that by its charter it was forbidden to assess or collect from persons insured more than at the rate of ten per cent. per annum on the amount of its premium notes, and that in all probability the rate to be assessed and collected would be less than at that rate, and that no assessment would be made the first year; and he also at the same time falsely and fraudulently stated and represented to them, with the purpose aforesaid, that said Houser and Weir had agreed with him to insure their tannery in said company, and that they had done so for the reason that said Weir had so lived at Indianapolis and well knew about the character and responsibility of said company. And thereupon the defendants, not doubting the truth of said representations, and in unhesitating reliance thereon, and upon the judgment and opinion of said Houser and Weir, which from said representations they supposed and believed had been most strongly expressed by such act and agreement in favor of the solvency and responsibility of said company and of its being a desirable company in which to effect insurance, did consent to and agree to insure their said property in said company, and did then and there pay to said agent the sum of eighty dollars

as a down payment, and did execute and deliver to him the said promissory note for eight hundred dollars, which is set forth in said complaint as ' exhibit A,' and is on its face expressed to be for value received in policy No. 3,784; and the company presently afterwards, in consideration thereof, executed and delivered to them said policy number 3,784, by which, in consideration of said note· and of said eighty dollars, they promised to insure said property and factory therein mentioned to the 23d day of May, 1872, in the sum of two thousand dollars against all loss by fire. Said original policy is now on file in this court, attached as an exhibit to the deposition of one E. B. Martindale, heretofore taken in a cause in this court brought by said insurance company against these defendants on the same identical notes which are the foundation of this suit, and which was dismissed at the last term of this court for want of prosecution, and to which original policy reference is hereby made. The defendants further state and charge that said representations were wholly false and fraudulent and were intended ‘to deceive and mislead the defendants; that said company was not restricted to her assessment of not exceeding ten per cent. per annum on said promissory note; that the affairs of said company were such at that time that it was certain that assessments of far more than that rate would be necessary; that the affairs of said company were then being badly managed, and it was on the point of total insolvency; and that said Houser and Weir had not agreed and never did agree or contract or insure their said tannery in said company, but on the contrary thereof, they had positively refused to do so, on account of the knowledge and belief of said Weir that said company was an unsafe and improper company in which to effect such insurance. And the defendants state that had they known of or suspected the falsity of any one of said statements of said agent, they would not have effected such insurance or given said notes.

" The defendants further state that at the time of the giving of said note for eight hundred dollars, they did not make

said payment in cash of eighty dollars, but by direction of said agent executed their note to said company for the same, payable on the — day of ——, 1865; and that before learning the falsity of said statements, or of any of them, they were called upon by said company to pay said note for eighty dollars, and did actually pay the same, but not till after the said policy had been so issued to them.

"The defendants further state that nothing occurred between the time of giving the notes hereinbefore mentioned, and after the acceptance of said policy, and the 1st day of December then next, and until after the giving of the said other two notes in said complaint mentioned, and which are therein set forth as exhibts 'B.' and 'C.,' to awaken any suspicion or doubt in the minds of the defendants as to the truth of said representations of said agent of said company, and, on the contrary, they continued to rely thereon, and never during all that time doubted or had any cause, within their knowledge, to doubt their truth; and while they continued in such reliance and confidence, to wit, on the said 1st day of December, 1865, said company by its agent again called on the defendants at said city of Laporte, and advised and requested them to effect a further insurance on said property in said company for a like sum of two thousand dollars, for which they represented that a policy of insurance should soon thereafter be issued to them by said company, and requested the defendants to give to them a similar premium note for eight hundred dollars, as for value received in such policy number 5,074, to be thereafter issued to them by said company, and also to execute to them a note for one hundred dollars payable on the 24th day of February, 1866. And thereupon they did, in such faith and reliance on said former representation, and for no other consideration whatever, so execute and deliver to said company, on the said 1st day of December, 1865, the said note for eight hundred dollars, which is set forth in said complaint as exhibit "B," and the said other note for one hundred dollars, which is therein set forth as exhibit "C," and which two notes, together with

said other note for eight hundred dollars, are the sole foundation of this suit. But the defendants further state that before said last mentioned policy was issued to them, and at some time between the said 1st day of December, 1865, and the 21st day of said month, said company notified them by letter, that they had made an assessment on said first mentioned premium note of a large sum of money, to wit, forty dollars, and required the same to be paid to it at Indianapolis shortly thereafter, which was wholly in violation of the assurances so given by said agent; that thereupon the suspicions of the defendants were excited as to the truth of the statements of said agent which had been so made to them, and on inquiry they became satisfied that said representations were all false, and thereupon at once determined that they would surrender and abandon said first mentioned policy, and would not accept said other policy which said company had so promised to issue to them. But, in order to avoid litigation, they determined to forward to said company said sum of forty dollars so assessed, and at the same time to cancel and return to said company said first mentioned policy. Thereupon they wrote, placing across the face of said first mentioned policy, and signed in their own proper hands, the following words, to wit:

LAPORTE, December 21st, 1865.

We, F. W. Meissner and C. W. Frankel, the parties insured in this policy, considering the said policy as worthless and of no value, and having been assured by the agent of said company that there would be no assessment on said premium note for one year, which is now assessed for forty dollars, we hereby cancel this policy, and surrender the same to the company, and demand our premium note herein mentioned. Signed) F. W. MEISSNER.
C. W. FRANKEL.
Witness, GEORGE L. SEYMOUR.

"The defendants further state that they did thereupon, without delay, forward said policy to Indianapolis, and caused the same and the sum of forty dollars to be tendered to said

company, and requested that said premium note be surrendered and canceled, which reasonable request was wholly refused by said company. The defendants further state that, although they had fully determined never to accept said second policy, or to pay either or any part of the two last mentioned notes, yet after the time when said other policy was so canceled, the said company did make out said policy number 5,074, as of the date of December 1st, 1865, and inclosed the same by mail to the defendants at Laporte, and the defendants, not knowing what was contained therein, took said letter from the post office and found therein said policy, and the same has ever since remained in their possession, but without any purpose or intention of relying thereon and holding the same as of any value or accepting the same. And the defendants have ever since been desirous to surrender the same to said company to be canceled and to receive back their said notes. But so it is, that said company insists that by reason of the defendants having so taken said policy from the post office, without knowing when they did so what it was, they have become bound to pay said notes, notwithstanding said frauds and the settled purpose aforesaid of the defendants. Said defendants herewith exhibit said last mentioned policy, to be canceled, or to be surrendered to said company, as may be deemed proper. The defendants further state and charge that said last mentioned policy and the said notes would have been void even if there had been no fraud on the part of the company, and if the same had been assented to by them, for the reason, among others, that they are now advised that the charter of said company requires, as a condition to the issuing of such policy, that a certain amount of money should be paid in cash in advance, which was not done and was not required by said company, and as to the necessity for which the defendants were wholly ignorant until long since the occurrence of all the facts above herein set forth.

"The defendants further state that as they are also now advised, said first mentioned note and said first mentioned policy

Whitman *v.* Meissner and Another.

were also void, for the reason that it is provided in said note that no assessment thereon should exceed the rate of ten per cent. on the face of said note, a condition which the de-·fendants have never in any manner consented to waive, and as to the illegality of which they had no knowledge at the time of the giving of said note or until long after the giving of all of said notes. The defendants now offer to surrender up both of said policies of insurance, to be canceled or disposed of as to the court may seem just. The defendants pray that said plaintiff may be compelled to answer this cross complaint; and will the court decree that said notes in said complaint mentioned be surrendered to the defendants, to be canceled, and said plaintiff be restrained and enjoined from setting up or asserting any claim, right, or title thereto, or from ever attempting to collect said moneys therein mentioned or any part thereof; and will the court grant to defendants such other and further relief in the premises as may seem just. And said defendants aver that inasmuch as there are doubts as to the authority of the court to finally adjudicate all the matters in controversy herein, they pray that said Sinnissippi Insurance Company may be made a defendant to this cross complaint and compelled to answer the.same."

To this there was a demurrer filed, for the cause that it did not contain facts sufficient to constitute a defense to the action, or to entitle the defendants to the relief asked for. The cause was continued, and at the next term the demurrer was withdrawn, and a motion filed asking that the defendants be required to separate and number the different paragraphs of said second paragraph and cross complaint. The defendants interposed a motion to strike out the former motion, because the plaintiff had previously demurred, and because it was not necessary to the ends of justice. The last motion was sustained, and we think there was no error in doing so. In the minor questions of practice, this court will not reverse the rulings of the court below unless we can see that an injury has been done to the adverse party, which we are unable to see in this ruling. If this latter

motion had not been made by the defendants, the court ought to have overruled the motion of the plaintiff, because there are no separate paragraphs to number in the second paragraph of the answer and cross complaint.

This paper is not artistically. drawn, and possibly might have been improved by proper motions to strike out or set aside certain parts or phrases of it; but, taken as a whole, it can only be construed as an answer and cross complaint to the whole of plaintiff's cause of action.

The demurrer was refiled to this answer and cross complaint, overruled by the court, and exception. Was this ruling correct? is the only remaining question before us.

We answer, it was. There is enough of fraud and mistake stated and shown to make it a good defense to the action, and to require a reply to it as an answer, and an answer to it as a cross complaint.

This opinion has been made very long by our being compelled to copy the answer and cross complaint, to give an intelligent understanding of the facts upon which we rule the law, and we shall content ourselves by making a few citations, which we think warrant our conclusions. As to separating the. second paragraph of the answer and cross complaint, see *Morris* v. *Graves*, 2 Ind. 354; *Detro* v. *The State*, 4 Ind. 200; *Hiberd* v. *Myers*, 5 Ind. 94.

As to the fraud, see 2 Parsons Con. (3d ed.) 268, 276; *Foley* v. *Cowgill*, 5 Blackf. 18; *Cronk* v. *Cole*, 10 Ind. 485; *Russell* v. *Branham*, 8 Blackf. 277; *Clem* v. *The Newcastle, &c., R. R. Co.*, 9 Ind. 488; *Louchheim* v. *Gill*, 17 Ind. 139; 1 Story Eq. § 137.

As to mistake of law under certain circumstances, see 1 Story Eq. §§ 120, 130; *Cooke* v. *Nathan*, 16 Barbour, 342; 1 Story Eq. § 137, *n* 1; *Bank of the U. S.* v. *Daniel*, 12 Pet. 32; *Keller* v. *Equitable Fire Ins. Co.*, 28 Ind. 170.

As to the time to awaken suspicions, or how long a party may rely on former representations, see *Keller* v. *Equitable Fire Ins. Co., supra.* As to what a person shall do who is a

member of such company, and how it must be done, see 1 G. & H. 395, sec. 45.

We have said more, and labored more, than we ought to have done in this case.

The judgment is affirmed, with costs.

*L. A. Cole, E. L. Bennett, J. E. McDonald, A. L. Roache* and *E. M. McDonald,* for appellant.

*J. B. & W. Niles,* for appellees.